Final argument this morning is 2012-1050 DUPLOSS MEDITECH v. INVIRO MEDICAL Final argument this morning is 2012-1050 DUPLOSS MEDITECH v. INVIRO MEDICAL  This case is an appeal from the TTAB which dismissed a counterclaim to cancel two registrations of merely descriptive terms that have not acquired distinctiveness. First, registration number 2944-686 of SNAP and DESIGN for syringes. And second, registration number 3073-371 of the MARC SNAP SIMPLY SAFER for syringes. There is not substantial evidence to support the TTAB's decision that DUOPRO failed to prove by preponderance of the evidence that the two MARCs are merely descriptive of the goods. Well, turning first to the SNAP, whatever we call it, the exclamation point, the findings, which are not very detailed, but the board finds this is a fanciful design which only suggests the breaking of something. We thus find the MARC as a whole is not a merely descriptive illustration. Firstly, is that kind of a question of factual determination that we have to review, or is that kind of a legal conclusion that they make? I believe that's a factual determination. Okay. And so how do we get beyond it, given our deferential standard of review? The definition they looked at didn't include that SNAP is also a sound, and that's part of the instructions, that when you snap it, you snap it off and it makes a sound. And so the design, I think, clearly would be likely to be interpreted as showing a sound because of those two accent marks that are between the upper part and the lower part of the exclamation point. But not necessarily a sound of a syringe breaking. I mean, the board focused on the fact that, yes, it's a symbol of something possibly breaking, but there would have to be an inferential step to get to the point of it necessarily being the product breaking. I think it shows the sound, or suggests the sound of visually snapping, and once you get to that point, that it suggests snap, regardless of what you're snapping, you have to look at it in the context in which the product was sold, and the product was sold with consistent emphasis on snap, because the snapping is what encapsulates the needle in the body of the syringe, and then it can't come out and poke somebody. You're saying that to the extent that the board focused on the fact that it had to somehow depict the snapping of the particular goods, you're saying that that was wrong, either because that's a wrong standard, or because they didn't look at it sufficiently in context to get to that point. I think that they didn't look at it sufficiently in context. They should not require that the drawing actually be a visual representation of the goods. In other words, if you have a syringe there and you were breaking it, that, I think, is not a correct interpretation of the merely descriptive standard. It suggests some feature or character of the goods, and clearly these goods have always been represented as snap is the key to having a safe syringe that won't poke anybody. Now, I think one of the ways in which you just answered Judge O'Malley's question is very compelling. You said they didn't look at it in context. I'm wondering if I'm articulating one of your arguments, which is that the board found snap merely descriptive, but then focused on the exclamation point almost in isolation, not in context, that while that exclamation point with the breakage, if it was the only thing sitting by itself, would be suggestive, but when it exists right next to the word snap, the mark as a whole is descriptive. And it may be one of the mistakes the board made as a matter of law was breaking the mark up into its component parts and not looking at it as a whole in that regard. Is that one of your arguments? Yes, that would be one of our arguments, that the mark must be looked at as a whole. And I think in the context of writing their decision, there was a registration of just the word snap alone without any design. Which they found descriptive. Which they found descriptive and which was then canceled and that was not the end. Well, they found it descriptive of the breaking of something, right? The breaking of the syringes when used on the syringes or something like that. They found it descriptive of the syringes and I don't know that they limited it to the breaking because there was also testimony in there that the name was picked because it was a snap to use, that it was simple to use. Well, the snap merely describes a significant feature or function of the petitioner's goods and it goes on to talk about the breaking. They associated it with the breaking. There were arguments about the double entendre and that it was simple in addition to being the breaking, but I think the board rejected that and we don't have an appeal on that issue. That's correct. I think the law of the case that the word SNAP without a design is descriptive. And the other mark is, of course, snap simply safer. And our position is that each of those words individually is clearly descriptive. Snap, law of the case, is descriptive. The person who picked the mark and who was the former president testified that they're, quote, simple and easy to use and the whole purpose of these syringes is to be safe, that you reduce needle stick injury. So you've got three words individually that are descriptive and together it doesn't create any confusion. I'm wondering to what extent, I mean, I may be testing your knowledge of trademark law, but one of the things that my law clerk found was it really bothered us when we read the board's opinion and it said simply safer amounts to puffery and the board seemed to base part of its decision on that notion that puffery, this form of exaggeration, takes it outside the realm of merely descriptiveness and we found a case by this court, Hoffman, called Hoover versus Royal Vices, which says puffery makes the mark merely descriptive, sort of the opposite from a legal standpoint of what the board concluded. And I know this isn't something that you briefed. This is something that we found. But I'm wondering if that is consistent with your knowledge of trademark law, like McCarthy on trademark. In fact, right after the portion the board quoted said the same thing, that puffery doesn't remove a mark from the realm of descriptiveness. And I'm wondering as a trademark lawyer if that's consistent with your understanding of the law. That would be consistent with my understanding of the law, and I apologize for not finding that case. I'm glad your report found it. But I think puffery is sometimes seen to me as just kind of an exaggeration and maybe not literally true, but something that tells you about the product that's kind of stated in a hyperbole manner. Now, I'm trying to understand the whole picture here. You didn't start this battle. They started this battle by attacking your mark. Right. We had a registration of Backsnap that had been on the books for some time, and they petitioned to cancel. Right. And they dismissed that. You then get rid of most of their registered marks, and we've got these two things left. Now, have you ever used either one of these? No. The marks shown that are on appeal, we have not used those. Because Backsnap comprises the word snap, and also because that's a description of how these syringes work, you snap them, and then you pull the plunger back, you snap it, and then the needle's inside the barrel where the medicine used to be. But whether these marks are registered or not, they're going to be able to use them because you're going to have the same problem if you attempt to attack them because the use of the word snap is descriptive, right? I'm not sure I followed the question. I'm trying to find out what you gain from knocking out these last two marks. Well, we could use an advertising piece that shows the snapping without having them come at us and say, well, you know, we lost the word, but we still got the exclamation point. Anything that looks like a snapping of an object is an infringement of our mark. And not so much that they would say that to us, but they might say it to our customers because a number of the allegations have been made to customers over the years by Enviro. And on the snap simply, and I think that would be what the client would say, is they're concerned primarily about their customers getting letters from Enviro's attorney questioning whether there's anything that our client is doing that's too close to their trademarks. And in terms of using snap simply safer, the client has never on the record expressed an intention to use that, but certainly each one of those words individually would be words they would want to use. It's safer than a regular syringe. It's simple to use, and you make a snap sound when you snap it to disable it. With that, if there are no more questions, we thank you for hearing us, and this will be my first argument ever on a post, so it's a good experience for me. Well, we hear it. Thank you, Mr. Moore. The case is submitted. That concludes the proceedings.